STATE OF CONNECTICUT *v.* KENNETH BURAK
(12351)

PETERS, C. J., HEALEY, DANNEHY, CALLAHAN and HAMMER, Js.

Argued October 1—decision released December 9, 1986

*Jon L. Schoenhorn,* for the appellant (defendant).

*Harry Weller,* deputy assistant state's attorney, with whom were *Herbert Carlson* and *John M. Massameno,* assistant state's attorneys, and, on the brief, *John M.*

*Bailey,* state's attorney, and *Mary Glassman,* law student intern, for the appellee (state).

CALLAHAN, J. A jury convicted the defendant of the crimes of murder and kidnapping in the first degree in violation of General Statutes §§ 53a-54 (a) and 53a-92 (a) (2) (A) respectively. He received an effective sentence of fifty years to life. On appeal, the defendant asserts that the trial court erred in (1) restricting his cross-examination of the state's witness Gary Zapor concerning Zapor's psychiatric records and any possible plea bargains Zapor may have entered into with the state, thereby violating the defendant's state and federal constitutional rights of confrontation, and (2) admitting prejudicial evidence concerning the defendant's flight prior to his arrest and his escape subsequent to his arrest. We find no error.

The jury reasonably could have found the following facts. In August, 1979, the defendant attempted to enlist the victim, Arthur Labier, to "set up" one Russell Garuti. The defendant apparently felt that Garuti had turned him in for a crime which led to the defendant's serving five years in the Connecticut Correctional Institution, Somers. Labier failed, however, to "set up" Garuti for the defendant and consequently incurred the defendant's enmity.

In the early evening of August 30, 1979, the defendant picked up Gary Zapor at work. Zapor lived with the defendant in New Britain. Thereafter, they picked up Zapor's girlfriend at work, and went to the defendant's residence. Zapor and his girlfriend left the residence at approximately 9 p.m. to have dinner. After dinner Zapor drove his girlfriend to her home and went to a bar where he encountered Labier and another youth outside. Labier agreed to accompany Zapor to the defendant's residence to "straighten things out" with the defendant. Upon arriving, the victim was

struck in the face by both the defendant and Zapor. The victim then agreed to take the defendant to Garuti, but instead broke free and fled. The defendant and Zapor chased Labier and subdued him. They then brought him back to the house, tied him to a chair, and proceeded to beat him with a sharp object.

According to Zapor, over the next several hours the defendant subjected the victim to beatings with a hammer, injections referred to as "hot shots" consisting of brake fluid, cleaning solution and dirty water, and jabs from sharp instruments. Zapor, although initially present and a participant in most of the beatings of the victim, left the residence for a portion of the time. When he returned, he observed the defendant still beating the victim and refusing to let him go. Finally, the defendant delivered a fatal stab wound to the victim's chest. Other facts will be discussed as they become relevant.

I

The defendant's first claim of error is that his state and federal constitutional rights to confront[1] and cross-

---

[1] This right is secured under article first, § 8, of the Connecticut constitution which provides: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel; to be informed of the nature and cause of the accusation; to be confronted by the witnesses against him; to have compulsory process to obtain witnesses in his behalf; to be released on bail upon sufficient security, except in capital offenses, where the proof is evident or the presumption great; and in all prosecutions by indictment or information, to a speedy, public trial by an impartial jury. No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law, nor shall excessive bail be required nor excessive fines imposed. No person shall be held to answer for any crime, punishable by death or life imprisonment, unless on a presentment or an indictment of a grand jury, except in the armed forces, or in the militia when in actual service in time of war or public danger."

The sixth amendment to the United States constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, in which district shall have been previously ascer-

examine adverse witnesses were violated when the trial court (1) denied the defendant access to Zapor's psychiatric records, and (2) refused to permit inquiry concerning Zapor's possible plea bargain with the state. We disagree.

We will first address the claim concerning the trial court's denial of access to Zapor's psychiatric records. Zapor was a key witness in the state's case against the defendant. The defendant subpoenaed a copy of Zapor's psychiatric records and first raised the issue of their admissibility during a voir dire on Zapor's competency to testify. In the absence of the jury, Zapor testified that in 1974 or 1975 he had been found incompetent to stand trial on charges of sexual assault and kidnapping and as a result had been institutionalized pursuant to a court order. Approximately one and one-half months after having been institutionalized, he was found competent to stand trial. Thereafter, the charges against him were nolled. Zapor also testified that he had received private psychiatric care sometime during 1973 or 1974. The court reserved decision on the admissibility of the psychiatric records and found Zapor competent to testify. It indicated, however, that the defendant could test the degree of Zapor's competency during cross-examination. The defendant then sought access to Zapor's psychiatric records on two separate occasions during the trial for use on cross-examination.

The defendant argued at trial and now argues on appeal that, because Zapor's hospitalization came as a result of a court order, the records were exempt from the psychiatrist-patient privilege pursuant to General

tained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

This constitutional provision is made applicable to the states through the fourteenth amendment to the United States constitution.

Statutes § 52-146f (4) (formerly General Statutes § 52-146f [d]).[2] He also claims that, even if we assume arguendo that the privilege is applicable, it is subordinate to the defendant's confrontation rights.

General Statutes § 52-146f (4) provides in pertinent part: "Communications made to or records made by a psychiatrist in the course of a psychiatric examination ordered by a court . . . may be disclosed at judicial or administrative proceedings in which the patient is a party, or in which the question of his incompetence because of mental illness is an issue, or in appropriate pretrial proceedings, *provided the court finds that the patient has been informed before making the communications that any communications will not be confidential* and provided the communications shall be admissible only on issues involving the patient's mental condition." (Emphasis added.)

We note at the outset that the record fails to indicate whether the trial court ever made any finding that Zapor had been informed before communicating with the psychiatrist that such communications would not be confidential. Such a finding is a prerequisite to the operation of § 52-146f (4). See *Bieluch* v. *Bieluch,* 190 Conn. 813, 817 n.2, 462 A.2d 1060 (1983). Even if such a finding is made by the trial court, the moving party must meet additional requirements before he can gain access to the contents of a court-ordered psychiatric examination, i.e., the patient must be a "party" in the action or "the question of his incompetence because of mental illness is an issue." General Statutes § 52-146f (4). In this case, as the trial court noted, Zapor was a state's witness and not a "party" to the action. Cf. *State* v.

---

[2] We note that there was an argument raised by the state at trial concerning the applicability of General Statutes § 54-142a, the criminal records erasure statute, to a court ordered psychiatric examination. We do not address this issue since this statute was not a basis for the trial court's ruling.

*White,* 169 Conn. 223, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). Further, the defendant did not claim at trial nor does he argue on appeal that Zapor's incompetence because of mental illness was an "issue" in this case. See *State* v. *Toste,* 178 Conn. 626, 629, 424 A.2d 293 (1979). The defendant sought access to the psychiatric records to impeach the credibility of Zapor as a witness, not to determine his competence. The trial court had already ruled that Zapor was competent to testify and the defendant does not challenge this ruling on appeal. We conclude, therefore, that the trial court was correct in finding General Statutes § 54-146f (4) inapplicable to this case and that Zapor's psychiatric records were privileged.

We must then address whether the trial court's ruling with regard to the psychiatric records precluded the defendant from conducting an effective cross-examination of the witness, in violation of his constitutional right to confront the witnesses against him. It is established that a defendant has the right to cross-examine a witness for the purpose of discrediting his testimony; *Davis* v. *Alaska,* 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); "[t]his right is secured for defendants in state criminal proceedings." *State* v. *Esposito,* 192 Conn. 166, 178, 471 A.2d 949 (1984), citing *Pointer* v. *Texas,* 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965); see also Conn. Const., art. I, § 8. "A witness may be impeached by questions relating to credibility, including questions about mental conditions which are relevant to his ability to perceive, recollect and articulate or to his capacity for truthfulness." *State* v. *Bruno,* 1 Conn. App. 384, 391, 473 A.2d 311 (1984), aff'd, 197 Conn. 326, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986); *State* v. *Piskorski,* 177 Conn.

677, 736–37, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

As set forth in *State* v. *Esposito,* supra, 179–80, "[i]f, however, the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for inspection on appellate review. If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having [his] testimony stricken in the event of refusal."

We have reviewed the record and find that the defendant did not make the necessary preliminary showing that failure to produce the records was likely to impair his confrontation rights. See *State* v. *Bruno,* 197 Conn. 326, 330, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986). No showing was made that the witness had a mental problem which affected his testimonial capacity at the time of the occurrence of the events in this case or at the time of the trial. *State* v. *Esposito,* supra; *State* v. *Piskorski,* supra; cf. *Taborsky* v. *State,* 142 Conn. 619,

116 A.2d 433 (1955). The only facts revealed during the defendant's offer of proof on this issue were that the witness had received psychiatric treatment from approximately 1974 to 1975. He was found incompetent to stand trial during this period, and declared competent shortly thereafter. This testimony did not indicate any inability on the part of the witness to recall or recount the events relating to the circumstances of Labier's death. See *State* v. *Esposito, supra,* 180. Although no witnesses were called, the defendant was not prevented from presenting other witnesses during his offer of proof to establish a foundation that the witness's mental unsoundness would affect his testimonial capacity. The testimony elicited from Zapor was simply insufficient to show that failure to produce his psychiatric records would impair the defendant's confrontation rights. See *State* v. *Simms,* 201 Conn. 395, 518 A.2d 35 (1986). The defendant would apparently have us hold that the records of anyone who has ever received psychiatric treatment, for whatever purpose, are fair game for disclosure; this we decline to do.

The defendant next argues that the trial court's ruling denying him access to any proposed or negotiated plea arrangement concerning Zapor unconstitutionally restricted his confrontation rights, and that the state's failure to produce information concerning any such arrangements constituted a violation of *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We find these arguments without merit.

On February 19, 1981, the defendant filed a discovery motion inquiring as to any plea agreements between the state and Zapor. The state objected to the motion indicating that it was "premature" before cross-examination and that the state would supply the information if a proposed disposition was reached. The motion was renewed at trial and denied. At trial, Zapor testified that he neither had been promised "anything

by anyone in exchange for his cooperation" with the state, nor did he expect any leniency in sentencing as a result of his cooperation. Defense counsel then sought to question Zapor on whether his attorney had reached an accord with the state's attorney concerning promises or other favorable treatment in exchange for testifying. The state and Zapor's attorney both objected on the ground of the attorney-client privilege. The trial court sustained the objection. The defendant argues that the attorney-client privilege was erroneously applied to this line of questioning, resulting in a denial of his right to confront the witness, and his right to exculpatory information.

Initially we conclude that the trial court's ruling on the attorney-client privilege was incorrect. "Communications between client and attorney are privileged when made in confidence for the purpose of seeking legal advice. *Doyle* v. *Reeves,* 112 Conn. 521, 523, 152 A. 882 (1931); Tait & LaPlante, Handbook of Connecticut Evidence (1976) § 12.5." *State* v. *Cascone,* 195 Conn. 183, 186, 487 A.2d 186 (1985). "[S]tatements made in the presence of a third party are usually not privileged because there is then no reasonable expectation of confidentiality." Id., citing *State* v. *Colton,* 174 Conn. 135, 138–39, 384 A.2d 343 (1977). Therefore, any communication between the witness's attorney and the state concerning a plea agreement would not fall within the scope of the privilege. The trial court erred in excluding this testimony on the basis of the attorney-client privilege.

We must now address whether this error deprived the defendant of his constitutional right to confrontation. As we indicated earlier in this opinion, "[t]he primary interest secured by confrontation is the right to cross-examination; *Douglas* v. *Alabama,* 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965); and an important function of cross-examination is the exposure

of a witness' motivation in testifying. *Greene* v. *McElroy,* 360 U.S. 474, 496, 79 S. Ct. 1400, 3 L. Ed. 2d 1377 (1959)." *State* v. *Lubesky,* 195 Conn. 475, 481–82, 488 A.2d 1239 (1985). Although the trial court did err in excluding the question concerning Zapor's counsel's communications with the state, we conclude that the ruling, when examined in the context of the cross-examination of Zapor, did not rise to the level of interference with the constitutional right to confrontation. Id. Since this error is not of constitutional dimension, the defendant has the burden of establishing that the erroneous ruling of the trial court was harmful to him. See *State* v. *Vitale,* 197 Conn. 396, 403, 497 A.2d 956 (1985).

The record discloses that defense counsel cross-examined Zapor on his motive for testifying. Defense counsel inquired whether Zapor had been promised any leniency or plea arrangement in exchange for his testimony against the defendant, to which Zapor responded in the negative. Therefore, the trial court's ruling did not unduly restrict the defendant's ability to cross-examine Zapor concerning his motivation to testify. See *State* v. *Rucker,* 177 Conn. 370, 375, 418 A.2d 55 (1979); cf. *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 (1979). We cannot, under the circumstances of this case, find that the court's ruling was harmful or clearly prejudicial to the defendant. See *State* v. *Vitale,* supra, 404; *State* v. *Shindell,* 195 Conn. 128, 141, 486 A.2d 637 (1985).

The defendant also argues that the erroneous application of the attorney-client privilege to the question concerning an agreement between Zapor's attorney and the state implicated a violation of the defendant's right to exculpatory information under *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). We disagree.

It is established that a prosecutor has an affirmative duty to provide the defendant with exculpatory material. *Brady* v. *Maryland,* supra. General Statutes § 54-86c[3] requires the state to reveal any information favorable to the defendant, which would include any understanding or agreements between any state's witness and the state. See *State* v. *Rucker,* supra, 373–74. There is nothing in the record, however, that reveals the existence of any plea agreement or understanding between the state and Zapor that the state suppressed. Zapor testified at trial that he had no agreement with the state and there is no indication anywhere in the record that this was not the case. In the absence of evidence that exculpatory material was withheld from the defendant, neither the principles of *Brady* and its progeny, nor the defendant's right to confront witnesses; *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); were violated. *State* v. *Rucker,* supra, 375–76 n.2.

## II

The defendant next claims that the trial court erred by admitting prejudicial evidence at trial concerning

---

[3] General Statutes § 54-86c provides: "DISCLOSURE OF EXCULPATORY INFORMATION OR MATERIAL. (a) Not later than thirty days after any defendant enters a plea of not guilty in a criminal case, the state's attorney, assistant state's attorney or deputy assistant state's attorney in charge of the case shall disclose any exculpatory information or material which he may have with respect to the defendant whether or not a request has been made therefor. If prior to or during the trial of the case, the prosecutorial official discovers additional information or material which is exculpatory, he shall promptly disclose the information or material to the defendant.

"(b) Any state's attorney, assistant state's attorney or deputy assistant state's attorney may request an ex parte in camera hearing before a judge, who shall not be the same judge who presides at the hearing of the criminal case if the case is tried to the court, to determine whether any material or information is exculpatory.

"(c) Each peace officer, as defined in subdivision (9) of section 53a-3, shall disclose in writing any exculpatory information or material which he may have with respect to any criminal investigation to the prosecutorial official in charge of such case."

the defendant's flight prior to his arrest and his later escape. The defendant argues specifically that evidence concerning three separate subjects was improperly admitted and individually or collectively prejudiced the jury so as to deny him a fair trial: (a) the fact that the defendant's lawyer contested extradition from South Dakota; (b) the introduction of the defendant's statements made to law enforcement officials on the trip back to Connecticut from South Dakota; and (c) the details concerning his attempted escape from the custody of the sheriff in Hartford on June 26, 1981, and the admission of an ice pick allegedly used in the aborted attempt.

We note at the outset that it is the responsibility of the trial court to balance the probative value of the evidence against its prejudicial effect to determine its admissibility. *State* v. *McClendon,* 199 Conn. 5, 13, 505 A.2d 685 (1986). Our review is limited to whether the trial court's rulings exceeded the latitude accorded to this exercise of judicial discretion. *State* v. *Ibraimov,* 187 Conn. 348, 352, 446 A.2d 382 (1982).

A

The defendant claims that the trial court erred in admitting testimony that the defendant had contested extradition at proceedings conducted in Rapid City, South Dakota. We agree, but find the error harmless under the circumstances of this case.

We have held that a defendant's exercise of his legal right to defend against extradition proceedings is not a proper basis for inferring that the defendant fled from the police or possessed consciousness of guilt. *State* v. *Mayell,* 163 Conn. 419, 425–26, 311 A.2d 60 (1972). In *State* v. *Mayell,* supra, the state introduced evidence that the defendant had contested his extradition for the purpose of showing a consciousness of guilt. In that case, unlike the present case, there was no other proba-

tive evidence of flight by the defendant. Id. We held, therefore, that the flight of the defendant was not a proper element to be considered by the jury. Id., 426.

In this case, there was other unchallenged testimony from which the jury could conclude that the defendant fled from Connecticut and did not return voluntarily. After the defendant left the murder scene, he stole license plates and a car, and used that car to flee to South Dakota. The defendant was captured in South Dakota, and two police officers were dispatched to South Dakota to return the defendant to Connecticut. The admission of testimony concerning the defendant's challenge to his extradition was, therefore, merely cumulative testimony under the circumstances of this case. As the state points out, the only time this testimony was specifically linked to consciousness of guilt was during a discussion outside the jury's presence. Moreover, the court did not refer to the defendant's challenge to his extradition during its instruction to the jury concerning the defendant's flight. We conclude that the defendant has failed to meet his burden of showing that he was harmed by the trial court's evidentiary ruling. See *State* v. *Vitale,* supra.

B

The defendant next argues that statements made by him to New Britain police officer Zygmunt Spiewak describing his capture in South Dakota had been improperly admitted at trial. The defendant objected to the admission of this testimony, claiming that his sixth amendment right to counsel and fifth amendment right to remain silent had been violated because he had not been read his rights pursuant to *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). We conclude that the trial court was correct in ruling that *Miranda* was inapplicable to the facts of this case.

Two conditions must exist before a criminal suspect is entitled to *Miranda* warnings: (1) the defendant must be in the custody of law enforcement officials; and (2) the defendant must be subjected to interrogation. *State* v. *Brown,* 199 Conn. 47, 51, 505 A.2d 1225 (1986); *State* v. *Stankowski,* 184 Conn. 121, 136, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981). The state has conceded that the defendant was in custody. Therefore, the only issue in dispute is whether the defendant was subjected to interrogation when he described the details of his capture to Spiewak.

We recently indicated in *State* v. *Vitale,* supra, 411–12, that the term "interrogation" under *Miranda* refers both to express questioning and any words or actions on the part of the police " 'that the police should know are reasonably likely to elicit an incriminating response from the suspect.' " Id., quoting *Rhode Island* v. *Innis,* 446 U.S. 291, 301–302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). When a statement is not elicited as a result of interrogation, but is instead given freely and voluntarily without any compelling influence it is, of course, admissible in evidence. *State* v. *Vitale,* supra, 412.

The defendant has the initial burden of proving interrogation. Id, 409. Nothing in the record indicates that the police initiated any interrogation of or any conversation with the defendant. Spiewak testified that he had had a conversation with the defendant in which the defendant had explained how he had been captured. The defendant acknowledges, however, that the record does not "indicate who commenced the conversation." On the basis of this evidence, we conclude that the defendant was not subjected to any words or actions of Spiewak that the officer should have known were reasonably likely to elicit incriminating responses from

the defendant. *State* v. *Stankowski,* supra, 138; cf. *State* v. *Krajger,* 182 Conn. 497, 499 n.2, 438 A.2d 745 (1980).

## C

Finally, the defendant argues that the trial court erred by admitting details of the defendant's escape attempt which occurred subsequent to his arrest. We disagree. The following evidence of the escape was presented by the state. On June 26, 1981, while in custody, the defendant and another prisoner were being transported by a sheriff from the courthouse to the Hartford correctional facility. The sheriff testified that he felt a hand around his neck, as well as a sharp object on the side of his neck. The defendant then told the sheriff not to do anything stupid or he would be killed. The defendant used a key to uncuff himself and the other prisoner. He then told the sheriff to handcuff himself to the steering wheel and to continue driving. The sheriff continued to drive, however, he only clicked the handcuffs closed without attaching them to the steering wheel. After stopping the car in traffic, the defendant opened the door and fled. The sheriff chased after the defendant and subdued him after a struggle. During the struggle, the sheriff received blows to the head, and stab wounds to the neck and forearm from a sharpened object which resembled an ice pick.

The defendant did not object to the admission of the escape attempt itself, but he did object to the admission of the details surrounding the escape. The defendant argued that the introduction of the homemade ice pick was particularly prejudicial because of the similarity between the stabbing of the victim and the use of a sharp weapon on the sheriff. The trial court found that the jury was entitled to have before it evidence that would show the extent to which the defendant had gone to effectuate his escape. With respect to the ice pick, the court found that the weapon was relevant and

material to show the defendant's desperate measures, as reflecting his consciousness of guilt.

It is relevant to show the conduct of an accused, as well as any statement made by him subsequent to an alleged criminal act, which may be inferred to have been influenced by the criminal act. *State* v. *Reid,* 193 Conn. 646, 655, 480 A.2d 463 (1984). " "The state of mind which is characterized as "guilty consciousness" or "consciousness of guilt" is strong evidence that the person is indeed guilty; 2 Wigmore, Evidence (3d Ed.) § 273; and under proper safeguards . . . is admissible evidence against an accused. . . .' " (Citations omitted.) Id., 655–56. The court must weigh the probative value against any prejudicial effect on the defendant. Id., 656; *State* v. *Williams,* 190 Conn. 104, 108, 459 A.2d 510 (1983). Certainly the details of the defendant's escape were admissible to show the defendant's consciousness of guilt. See *State* v. *Piskorski,* 177 Conn. 677, 723, 419 A.2d 866 (1979). Although the homemade ice pick used in the escape attempt was similar to one of the weapons used against the victim; cf. *State* v. *Girolamo,* 197 Conn. 201, 206–207, 496 A.2d 948 (1985); *State* v. *Williams,* 182 Conn. 262, 269–70, 438 A.2d 80 (1980); the jury had already heard evidence that the defendant had beaten the victim with his fists, a hammer and a stick and had stabbed him with a sharp instrument and injected him with needles. We, therefore, cannot conclude that the trial court abused its discretion when it determined that the probative value of the ice pick with respect to the defendant's state of mind during his escape attempt outweighed any prejudicial impact on the jury.

There is no error.

In this opinion the other justices concurred.