[No. D005080. Fourth Dist., Div. One. Feb. 10, 1988.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY L. WESLEY, Defendant and Appellant.

520

**COUNSEL**

William K. Mueller for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Michael D. Wellington and Lilia E. Garcia, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KREMER, P. J.—A jury convicted Jerry L. Wesley of failure to appear after being released on bail (Pen. Code,[1] § 1320.5). ■ On appeal, Wesley contends his conviction must be reversed because the trial court failed to sua sponte instruct the jury they needed to find Wesley specifically intended to evade the process of the court before convicting.

### FACTS

On April 15, 1986, during a lunch break in his preliminary hearing on pending felony charges Wesley left the courthouse. He did not return at the time the court had stated the proceedings would continue. He showed up the next day, claiming he had not returned the day before because his medication made him feel ill and disoriented.

### DISCUSSION

The issue Wesley raises on appeal is whether section 1320.5 is a specific or general intent crime.

■ The Supreme Court in *People* v. *Hood* (1969) 1 Cal.3d 444, 456-457 [82 Cal.Rptr. 618, 462 P.2d 370], explained the difference between general and specific intent crimes: "Specific and general intent have been notoriously difficult terms to define and apply, and a number of text writers recommend that they be abandoned altogether. [Citations.] Too often the characterization of a particular crime as one of specific or general intent is determined solely by the presence or absence of words describing psychological phenomena—'intent' or 'malice,' for example—in the statutory language defining the crime. When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent."

---

[1] All statutory references are to the Penal Code unless otherwise specified.

■ The fundamental rule of statutory construction is ascertaining the Legislature's intent so as to effectuate the purpose of the law. (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) A court first turns to the words of the statute itself, giving significance to every word, phrase, sentence and part of an act in furtherance of the legislative purpose, if possible. (*People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104].) A construction which renders any part of a statute surplusage should be avoided. (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580].) The statutory language must be construed in context and the various parts of a statute "must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*People* v. *Black, supra,* p. 5.) The legislative history as well as the historical circumstances of a statute's enactment may be considered in ascertaining the Legislature's intent. (*Ibid.*)

Section 1320.5 provides: "Every person who is charged with the commission of a felony, who is released from custody on bail, and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony. Upon a conviction under this section, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) or by imprisonment in the state prison, or in the county jail for not more than one year, or by both the fine and imprisonment. Willful failure to appear within 14 days of the date assigned for appearance may be found to have been for the purpose of evading the process of the court."

Looking first at the words of the statute, we find the Legislature used the following language in the first sentence: "Every person who . . . *in order to evade the process of the court* willfully fails to appear as required, is guilty of a felony." (Italics added.) The ordinary meaning of the phrase "in order to" is to delineate a purpose.[2] Here the stated purpose is "to evade the process of the court." This modifies the language "willfully fails to appear as required." ■ Giving this language its ordinary import, we conclude the Legislature intended section 1320.5 to be a specific intent crime. Not only must the individual intend to fail to appear, but also he or she must *intend* the failure to appear to "achieve some additional purpose," i.e., "to evade the process of the court."

This conclusion the Legislature intended section 1320.5 to be a specific intent crime is reinforced by the last sentence of section 1320.5, stating: "Willful failure to appear within 14 days of the date assigned for appearance may be found to have been *for the purpose of evading the process of the*

---

[2] Webster's defines "in order to" as "for the purpose of." (Webster's New Internat. Dict. (3d ed. 1968) p. 1588, col. 1.)

*court.*" (Italics added.) This sentence makes clear that the willful failure to appear must be for a particular purpose, that is, "evading the process of the court."

The Attorney General argues the language of "in order to evade the process of the court" does not describe a mental element or a required intent but rather limits the range of category of conduct which is deemed unlawful. The Attorney General would construe section 1320.5 to say an individual is guilty when he or she willfully fails to appear and thereby avoids the process of the court. Such a construction ignores the Legislature's use of the phrases "in order to" and "for the purpose of" and renders these phrases mere surplusage, a result to be avoided.

Furthermore, the Attorney General's construction that section 1320.5 is a general intent crime is not in harmony with the general statutory scheme.

Failure to appear was first made a distinct crime in 1959 when the Legislature authorized release of a defendant on his or her own recognizance. (Stats. 1959, ch. 1340, pp. 3612-3613.) This statute read as follows: "Every person who is charged with the commission of a felony who is released on his own recognizance pursuant to this article who willfully fails to appear as he has agreed, is guilty of a felony, punishable as provided in Section 18 and 19a."

The statute as enacted was clearly a general intent crime; it required only the intent to do the act, to willfully fail to appear. (See *People* v. *McCaughey* (1968) 261 Cal.App.2d 131, 136 [67 Cal.Rptr. 683].)

Section 1319.4 was repealed in 1979 and replaced by section 1320 as part of legislation allowing a defendant release on bail by posting 10 percent of the amount set for bail. This new statute, in pertinent part, provided: "Every person who is charged with the commission of a felony who is released from custody on his or her own recognizance and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony, and upon conviction shall be punished by a fine not exceeding five thousand dollars ($5,000) or by imprisonment in the state prison, or in the county jail for not more than one year, or by both such fine and imprisonment. It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance intended to evade the process of the court." (§ 1320, subd. (b).)

Significantly, in this section, the Legislature added the language "who in order to evade the process of the court," language consistent with requiring a specific intent. The inclusion of this language was deliberate. As originally

proposed, section 1320 did not contain this language; it was added by the Assembly Criminal Justice Committee on May 17, 1979. (See Assem. Bill No. 2 (1979).) The Legislature also made clear its intent that section 1320 be a specific intent offense by providing in the last sentence of section 1320: "It shall be presumed that a defendant who willfully fails to appear within 14 days of the date assigned for his or her appearance *intended* to evade the process of the court." (Italics added.)

The Pacific Law Journal analyzed the new statute and concluded: "The new law adds the intent of evading the process of the court as an element of the crime and specifies that a felony defendant who willfully fails to appear within fourteen days of the date set for his or her appearance is presumed to have intended to evade the process of the court. Both presumptions appear to be rebuttable." (*Review of Selected 1979 California Legislation* (1979-1980) 11 Pacific L.J. 428.)

In 1983 the Legislature enacted section 1320.5, making it a crime to fail to appear after posting bail. (Stats. 1983, ch. 403, § 1, pp. 1669-1670.) Section 1320.5 echoes the language of section 1320 except for the last sentence addressing an evidentiary matter. Section 1320.5 allows an evidentiary finding from a given state of facts (a defendant's failure to appear within 14 days), while section 1320 creates a rebuttable presumption from those same facts. It is plain both sections contain distinct phrases which describe a defendant's state of mind in similar terms: willful failure to appear "in order to evade the process of the court." Section 1320 makes express that the mental state is willful failure "*intended* to evade the process of the court." (Italics added.)

We perceive no difference in the states of mind described in the two sections. Nor can we perceive any reason why the Legislature would wish to distinguish between the states of mind for the crime of failing to appear depending on whether the defendant was released on his or her own recognizance rather than on bail. Both sections should be read to require proof of an identical state of mind: willful failure to appear with the intent to evade the process of the court.

We conclude the trial court here should have sua sponte instructed the jury on the necessary specific intent. The court's failure to instruct on the element of specific intent denied Wesley due process and was error of constitutional dimension. (*People v. Garcia* (1984) 36 Cal.3d 539, 551 [205 Cal.Rptr. 265, 684 P.2d 826]; *People v. Ford* (1964) 60 Cal.2d 772, 792 cert. den. [36 Cal.Rptr. 620, 388 P.2d 892] 377 U.S. 940 [12 L.Ed.2d 303, 84 S.Ct. 1342]; *People v. Williams* (1980) 102 Cal.App.3d 1018, 1029 [162 Cal.Rptr. 748].) This error requires reversal unless after a review of the

entire record, this court may say that the error was harmless beyond a reasonable doubt. (*Delaware* v. *Van Arsdall* (1986) 475 U.S. 673, 684 [89 L.Ed.2d 674, 686, 106 S.Ct. 1431].)[3]

After a review of the entire record, we cannot say the error here was harmless beyond a reasonable doubt. Wesley's defense precisely focused on his alleged lack of intent to evade the process of the court. He testified he, in fact, returned to court, was disoriented due to illness and medication and believed his absence would not disrupt the court proceedings since he anticipated they would be adjourned if he appeared and advised the court of his state. We neither endorse nor pass upon the persuasiveness of any of this evidence. We hold only that it raises issues which we cannot dismiss as inconsequential under the *Chapman* standard.

The judgment is reversed.

Wiener, J., and Todd, J., concurred.

---

[3] In *People* v. *Garcia, supra,* 36 Cal.3d 539, at pages 550-551, the California Supreme Court interpreted decisions of the United States Supreme Court, particularly *Sandstrom* v. *Montana* (1979) 442 U.S. 510 [61 L.Ed.2d 39, 99 S.Ct. 2450], to require automatic reversal when a court failed to instruct on the element of intent. However, *Rose* v. *Clark* (1986) 478 U.S. 570, 581-582 [92 L.Ed.2d 460 at pp. 472-474, 106 S.Ct. 3101], holds *Sandstrom* error subject to the *Chapman* harmless error test clearly indicating *Garcia* misreads the controlling federal cases. *Rose* v. *Clark* confines automatic reversal to cases in which error aborted the basic trial process such as failure to provide counsel, introduction of a coerced confession, a directed verdict for the prosecution or denial of the opportunity to present evidence before an impartial judge and jury (*Rose* v. *Clark, supra,* 478 U.S. at pp. 577-578 [92 L.Ed.2d at pp. 470-471].) Since the error here is not of that scope, we apply the *Chapman* test.