[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION FOR NEW TRIAL
The defendant, Bill-Roy Henderson, was convicted of Conspiracy to Commit Murder, Accessory to Murder and Tampering with a Witness on November 5, 2001. After the verdicts were accepted by the court, but prior to sentencing, the assistant state's attorney on the case received a letter from one of the state's witnesses, Michael Wright. This letter expressed the witness's unhappiness at being in protective custody in the correctional facility where he was being held. The letter also requested the assistant state's attorney to have the witness transferred to a "federal prison that is decent", as previously promised. The letter was given to defense counsel, who proceeded to file a Motion for New Trial, based on a failure of the prosecution to provide the defense with material exculpatory information prior to the trial, a Brady violation. This court conducted an evidentiary hearing on this motion over the course of two days. The attorneys have each provided the court with briefs, and oral argument. After full consideration, this court finds the claims of the defendant to be meritless, and hereby denies the defendant's Motion for New Trial.
 I. FACTS
On October 1, 2001 this court commenced the jury trial of the defendant on charges of Conspiracy to Commit Murder, Attempt to Commit Murder and Tampering with a Witness. After five days of evidence, and two days of deliberations, the jury found the defendant guilty of all charges. During the trial, the state's key witness was Michael Wright, the person who actually shot and killed the victim, and who is presently serving a sentence for that crime. Wright testified concerning his and the defendant's involvement in the crime. Wright testified that he was currently incarcerated because of his involvement, and that he was one of two shooters who did the actual killing. The court will also note that at the hearing in probable cause defense counsel was informed that Wright was being held in protective custody at a Connecticut correctional facility. On cross examination, Wright testified that the reason he was CT Page 7964 testifying was to get back at the defendant, and to the effect that he was not getting anything from the state in exchange for his testimony.
After the verdict was received on November 5, 2001, Wright sent a letter to the prosecutor. This letter was marked State's Exhibit 1 at the evidentiary hearing on the defendant's Motion for New Trial. In this letter, Wright informed the prosecutor that he did not like being in protective custody at the correctional facility where he was, and that Wright wanted to be transferred to a "federal prison that is decent" as, he stated in the letter, he was promised. The defendant was provided with a copy of this letter. The defendant then proceeded to file a Motion for New Trial claiming that the state's promise to Wright to transfer Wright to a federal prison had been suppressed, and that information was both exculpatory and material to the defendant's case. Based on these allegations the defendant claims his constitutional rights have been violated, and he is entitled to a new trial.
This court conducted an evidentiary hearing on the defendant's motion. At the hearing, Wright and Inspector James Rovella, testified about how often Wright met with the prosecutor and Insp. Rovella, what was talked about at those meetings, and the nature of the information contained in Wright's letter to the prosecutor. When confronted with specific sentences contained in the letter, Wright testified that the statements he attributed to the prosecutor were actually Wright's words, and not the words of the prosecutor. Wright also testified that neither the prosecutor nor Insp. Rovella, had ever promised to move him to a federal prison. Wright did testify that there was conversation between himself and Insp. Rovella concerning moving the defendant into protective custody, and also moving the defendant to an out-of-state correctional facility for his protection. Wright further reiterated that the reason he testified for the state during the defendant's trial was to get back at the defendant and that he did not testify in exchange for some benefit from the state. Furthermore, Wright testified that he did not get anything by being transferred from one prison to another. All the witness wanted was to get out of protective custody. Wright testified that the state never told him they could arrange for his housing. There was no testimony from either Wright or Insp. Rovella about any agreed arrangement to transfer Wright to a federal prison. The statement in the defendant's brief that Insp. Rovella testified about discussions with the department of correction concerning transferring Wright to a federal prison is plainly wrong. The evidence shows that the witness was transferred into protective custody, against his will, because he chose to testify. The evidence also shows that all the witness wanted was to be back in the general population of whatever correctional facility he ultimately was placed in. This court finds that both Wright and Insp. Rovella were credible witnesses. This court also finds, based on the CT Page 7965 evidence produced at the hearing on this motion, that there was never any promise, express or implied, made to Wright, to transfer him to federal prison in exchange for his testimony. There was throughout the evidentiary portion of this hearing frequent reference to a transfer "out of state". This court takes judicial notice of the fact that the state of Connecticut, through contracts with other states, now houses a number of Connecticut inmates in other jurisdictions, most notably, but not exclusively, Virginia. The point being that a transfer of an inmate "out of state" does not necessarily refer to a transfer to a federal prison.
 II. DISCUSSION
Under Connecticut rules of practice a defendant can move for a new trial within five days of a verdict or guilty finding. P.B. § 42-54. If the defendant can prove "an error by reason of which the defendant is constitutionally entitled to a new trial", the court shall grant the defendant's motion. P.B. § 42-53. The motion filed by the defendant is this case was filed timely, and the defendant has claimed a violation of due process which, if proven, would entitle the defendant to a new trial.
The defendant makes the claim that the state suppressed exculpatory information which was material to the guilt of the defendant, in violation of the due process clauses of the state and federal constitutions. The standard to determine whether the defendant's due process rights have been violated is the same under both the state and federal constitutions. "The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United States constitution and the Connecticut constitution."State v. Floyd,253 Conn. 700, 736, 756 A.2d 799 (2000). It violates the defendant's rights to due process, under both the state and federal constitutions when the state suppresses exculpatory information which is material to the guilt of the defendant. Brady v. Maryland, 373 U.S. 83, 86,83 S.Ct. 1194,10 L.Ed.2d 215 (1963); State v. Wilcox, 254 Conn. 441, 441 A.2d 824
(2000).
The analysis of the defendant claim begins with a review of "[t]he pertinent standard, outlined by Brady rand its progeny, by which we determine whether the state's failure to disclose evidence has violated a defendant's constitutional rights. In Brady v. Maryland, supra,373 U.S. 87, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. To establish a Brady violation, the defendant must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable CT Page 7966 to the defendant, and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) State v. Wilcox, supra,254 Conn. 452.
The first element of a Brady violation which the defense must prove is that there is information which the state did not provide to the defense, "suppression". State v. Floyd, supra, 253 Conn. 737. To determine whether or not material has been suppressed, this court must make a factual finding concerning the existence of the alleged agreement between the witness, Wright, and the prosecutor. State v. Floyd, supra,253 Conn. 737. Upon reviewing the testimony presented at the hearing on this motion, this court is convinced that there were no promises made, express or implied, to procure Wright's testimony. Since this court has found that no promises were made, the existence of those promises was not suppressed.
Wright is currently serving a sentence based on his involvement in this crime. At the trial and again at the hearing, Wright testified that the sole reason for his testimony was to get back at the defendant. During his testimony in this hearing, Wright expressed a concern that he did not want to be placed in protective custody. Wright was concerned that he would not fit in. The defendant was aware during the trial that Wright was being held in protective custody. The attorney for the defendant was informed that Wright had been moved into protective custody at the time of the hearing in probable cause, before the defendant's trial. Wright testified that it was explained to him that although it was regular procedure that state's witnesses be placed in protective custody, the prosecutor and Insp. Rovella would try to place Wright out of state in order to have him moved out of protective custody, while still attempting to protect him from retribution for testifying.
The defendant's reliance on the letter from Wright to the prosecutor appears to be misplaced. Wright testified that "prison is prison" and that he, Wright, saw no benefit to being transferred. Wright was really only interested in a return to the status quo. He preferred not to receive the "benefit" of being placed in protective custody. The state placed Wright in protective custody, against his will, to protect him. After providing testimony in this case, all that Wright cared about was returning to the general population, in whatever correctional facility he was being held in. There is no credible evidence that the state ensured Wright that he would be moved out of protective custody once he testified. Wright's testimony against the defendant at the trial could only reasonably said to have been made in spite of the mandated, proposed "benefit" of being transferred into protective custody and subsequently out of state. Wright's preference to being returned to the general population, while known to the state, was never a condition of his testifying at the CT Page 7967 defendant's trial. The transfer back into the general population of a correctional facility may be a benefit, from the objective perspective of a person in the shoes of the witness. However, without a promise, express or implied from the state, the basis of the defendant's claim must fail. An expectation of favorable treatment by the witness, without some acknowledgement or acquiescence by the state is insufficient to prove an "informal understanding" between the state and the witness. State v.Floyd, supra, 753 Conn. 740. The defendant has claimed in his motion that the state suppressed the "promise" it made to the witness, to transfer the witness to a "federal prison that is decent", in exchange for the witness's agreement to testify against the defendant. There is no credible evidence before this court, which establishes the existence of any express promise made by the state to Wright. Based on this same evidence, this court is of the opinion that there was also never even a tacit agreement that the state would transfer Wright to a federal prison to reward Wright for testifying. "In the absence of evidence that exculpatory material was withheld from the defendant, the principles ofBrady and its progeny . . . [are not] violated." [Citations omitted, internal quotations omitted] State v. Burak, 201 Conn. 517, 528,518 A.2d 639 (1986).
Notwithstanding this court's finding that there were no promises made which were suppressed, in the event that the statement made to Wright could in any manner be considered to be a promise in exchange for testimony, and further that the defendant was unaware of that promise, this court will provide further analysis concerning the defendant's claims.
The next element which the defendant must prove, in order to succeed on aBrady motion for a new trial is that the suppressed material is exculpatory or "favorable" to the defense. State v. Floyd, supra,253 Conn. 736. The type of information involved in this case, an exchange of testimony for some benefit from the state can only be characterized as impeachment evidence. This type of information does not provide the fact finder with any substantive facts concerning the crime, and would only be admissible and relevant to show that the witness should not be believed because his testimony has been "bought" by the state. "It is well established that impeachment evidence as well as exculpatory evidence falls within Brady's definition of evidence favorable to an accused."State v. Floyd, supra, 253 Conn. 737. Based on the overwhelming weight of authority, the information in this case would be considered favorable under a Brady analysis. However, even favorable evidence must be relevant before a Brady violation has been established. State v. Wilcox, supra,254 Conn. 453.
The final element which the defendant needs to be establish is that the CT Page 7968 favorable information was material to the guilt or punishment of the defendant. State v. Wilcox, supra, 254 Conn. 452. The question on materiality is "whether in [the absence of the suppressed evidence, the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." State v. Wilcox, supra, 254 Conn. 454. Depending on the evidence produced at any given trial, cumulative impeachment evidence may be found not to be material under a Brady
analysis. State v. Wilcox, supra, 254 Conn. 455. "The determination of materiality has been said to be inevitably fact-bound and like other factual issues is committed to the trial court in the first instance." (Internal quotation marks omitted.) State v. Correa, 241 Conn. 322, 361,696 A.2d 944 (1997). "[T]he mere possibility that an item of undisclosed evidence might have helped the defense or might have affected the outcome of the trial, however, does not establish materiality in the constitutional sense." (Internal quotation marks omitted.) State v.Ortiz, 252 Conn. 533, 546, 747 A.2d 487 (2000). The question in this case is, does the purported "benefit from the state" actually function to impeach the witness? This court finds that it does not. Wright was asked at the trial whether or not he was getting anything from the state in exchange for his testimony. His answer was that he was not. At the hearing on this motion, Wright testified that being transferred to some other prison was not a benefit. In his words "prison is prison". At the trial, the jury was informed that Wright was currently jailed for his participation in the acts constituting this crime. The jury knew that Wright was the "shooter", that Wright himself was the one who shot and killed "Pitbull", the victim in this case, and had attempted to kill "Pitbull's" companion. The jury knew that Wright was a sentenced prisoner, and had engaged in other "unsavory" conduct. Wright testified about his convictions for drugs, and concerning his convictions for Assault, Conspiracy for Assault, Tampering and Manslaughter. Concerning his own trial for the murder of "Pitbull," Wright informed the jury that "justice was blind" the day that the jury could not agree on a verdict in the charge of murder against him. Wright testified that he had committed or conspired to commit many other serious crimes and robberies. Wright testified that he hated the defendant, and also about his willingness to kill the defendant's attorney, if he had been asked. Wright testified that he hated the defendant, referring to him as "maggot", who had "screwed" him by getting others to testify against him. The jury was also informed that Wright was not a citizen of this country, and that there was a pending appeal of a deportation order concerning Wright. In the context of the timing of this trial, less than two months after the tragedy of September 11, 2001, this type of impeachment evidence was of substantial weight. Although no promise of reduction of sentence was made, the jury also knew Wright had no legal claim to a reduction in sentence without the state's attorney's agreement. Wright told the jury that he did not believe that the state's attorney for this case even had CT Page 7969 the authority to reduce his sentence, going so far as to refer to the state's attorney by a derogatory nickname. Wright told the jury that the reason lie was testifying was to get back at the defendant for having others testify against Wright. The defendant knew that Wright was in protective custody, since the defendant's probable cause hearing, but did not place that fact before the jury. The defense would have used the promise to transfer the witness, if there in fact had been one, at its own peril. By placing the witnesses status in protective custody before the jury, the defendant runs the risk that the jury will then realize or infer that the witness needs to be protected from the defendant. "[E]vidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory. Implicit in the standard of materiality is the notion that the significance of any particular bit of evidence can only be determined by comparison to the rest." State v.Wilcox, supra, 254 Conn. 455. This court finds that based on these considerations, the purported deal to relocate Wright to another prison in exchange for his testimony would not have impeached this witness concerning the testimony he provided at this trial. The defendant was able to put substantial impeachment evidence before the jury concerning this witness. Ultimately the jury did convict the defendant, based on the state's evidence, including that of Michael Wright.
 III. Conclusion
Upon a review of the evidence produced both at the trial of the defendant, and at the evidentiary hearing held on the defendant's Motion for New Trial, this court finds that the information concerning Michael Wright, and his post-verdict letter to the prosecutor do not merit granting the defendant a new trial. There was no "suppression of exculpatory evidence" as that term has been defined. There was no promise, express or implied, that the state made to Wright in exchange for his testimony. Furthermore, the information contained in the letter does not function to impeach the witness, in the context of the evidence which was before the jury. The defendant received a fair trial, therefore his Motion for New Trial is DENIED.
 ___________________ Mullarkey, J.
CT Page 7970