Filed 2/9/21  P. v. Reynolds CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>BRIAN THOMAS REYNOLDS,<br><br>Defendant and Appellant. | F076190<br><br>(Super. Ct. Nos. CRF48393, CRF50084, CRF50586, CRF52089)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Jin H. Kim, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Daniel B. Bernstein, and Cameron M. Goodman, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

In Tuolumne County Superior Court case No. CRF48393 (case No. CRF48393), defendant Brian Thomas Reynolds pled guilty to theft and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)) and admitted he was previously convicted of a qualifying "strike" offense under the Three Strikes law (Pen. Code,[1] § 667, subds. (b)-(i)).

In Tuolumne County Superior Court cases Nos. CRF50084 (case No. CRF50084) and CRF50586 (case No. CRF50586), which were consolidated, a jury convicted defendant of two counts of failure to appear in court while released on bail (§ 1320.5). With regard to case No. CRF50084, the jury found true the allegation defendant committed the first violation while released on bail in case No. CRF48393 (§ 12022.1). With regard to case No. CRF50586, it found true the allegation he committed the second violation while released on bail in case No. CRF50084. In a bifurcated proceeding, defendant admitted he was previously convicted of a qualifying "strike" offense (§ 667, subds. (b)-(i)) and served five prior prison terms (§ 667.5, subd. (b)).

In Tuolumne County Superior Court case No. CRF52089 (case No. CRF52089), a jury convicted defendant of criminal threats (§ 422, subd. (a) [count I]) and willful infliction of corporal injury on a cohabitant (§ 273.5, subd. (a) [count IV]) and found true the allegations he committed these offenses while released on bail in cases Nos. CRF48393 and CRF50084 (§ 12022.1).[2] In a bifurcated proceeding, the trial court found defendant was previously convicted of a qualifying "strike" offense (§ 667, subds.

---

[1] Unless otherwise indicated, subsequent statutory citations refer to the Penal Code.

[2] The jury found defendant not guilty of assault with a deadly weapon (§ 245, subd. (a)(1) [count VI]) and could not reach a verdict on a second charge of willful infliction of corporal injury on a cohabitant (§ 273.5, subd. (a) [count II]) and two charges of false imprisonment by violence (§ 236 [counts III & V]). The trial court declared a mistrial as to the deadlocked counts and later granted the prosecution's motion to dismiss them.

(b)-(i)), was previously convicted of a serious felony (§ 667, subd. (a)(1)), and served five prior prison terms. (§ 667.5, subd. (b)).

On July 12, 2017, defendant was sentenced on all four cases. He received an aggregate term of 28 years four months.

Specifically, in case No. CRF52089, the trial court imposed a sentence of 22 years four months: a doubled upper term of eight years, plus four years for two on-bail enhancements and four years for four prior prison term enhancements, on count IV;[3] and a doubled one-third middle term of 16 months, plus five years for a prior serious felony enhancement, on count I.[4] The court also assessed a $6,600 restitution fine (§ 1202.4) and stayed a parole revocation restitution fine pending successful completion of parole (§ 1202.45).

In case No. CRF48393, per stipulation, the court imposed a doubled one-third middle term of 16 months to run consecutively to defendant's sentence in case No. CRF52089. It also assessed a $300 restitution fine (§ 1202.4) and stayed a parole revocation restitution fine pending successful completion of parole (§ 1202.45).

In case No. CRF50084, the court imposed a doubled one-third middle term of 16 months to run consecutively to defendant's sentence in case No. CRF52089.[5] It also assessed a $300 restitution fine (§ 1202.4) and stayed a parole revocation restitution fine pending successful completion of parole (§ 1202.45).[6] In case No. CRF50586, the court imposed a sentence of three years four months to run consecutively to defendant's sentence in case No. CRF52089: a doubled one-third middle term of 16 months, plus two years for an on-bail enhancement. It also assessed a $900 restitution fine (§ 1202.4) and

---

[3] The court struck a fifth prior prison term enhancement.

[4] The court stayed two on-bail enhancements.

[5] The court struck a prior prison term enhancement.

[6] The court struck an on-bail enhancement.

3.

stayed a parole revocation restitution fine pending successful completion of parole (§ 1202.45).

Defendant appeals from the judgments entered in all four cases. In his opening brief, he makes numerous arguments. First, one or both of defendant's failure-to-appear convictions must be reversed because (1) the trial court gave an improper instruction to the jury; (2) his attorney rendered ineffective assistance by failing to object on several occasions; and (3) the cumulative effect of these errors deprived him of due process. Second, his conviction for willful infliction of corporal injury on a cohabitant must be reversed because the court (1) erroneously admitted into evidence the victim's testimonial statements to the police; and (2) failed to instruct the jury on the lesser included offense of misdemeanor battery of a cohabitant. Third, the court improperly imposed more than two on-bail enhancements. Fourth, in view of a recent amendment to sections 667, subdivision (a), and 1385, enacted by Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill No. 1393) (Stats. 2018, ch. 1013, §§ 1-2, eff. Jan. 1, 2019), the case must be remanded to afford the court an opportunity to exercise its sentencing discretion as to the prior serious felony enhancement. Finally, before imposing any fines, the court should have conducted an ability-to-pay hearing pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*).

In the respondent's brief, the Attorney General agrees only two on-bail enhancements were authorized and a remand for reconsideration of sentencing in light of Senate Bill No. 1393 is appropriate. We accept these concessions. For the reasons set forth below, we affirm the convictions. Because the case must be remanded for resentencing, defendant's *Dueñas* argument is moot.

In a supplemental brief, defendant asks us to strike the four prior prison term enhancements in view of a recent amendment to section 667.5, subdivision (b), enacted by Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill No. 136) (Stats. 2019,

4.

ch. 590, § 1, eff. Jan. 1, 2020). The Attorney General concurs. We accept this concession.

<b><u>STATEMENT OF FACTS</u></b>

**I.      Case No. CRF48393**

The prosecution provided—and the trial court accepted—the following factual basis for defendant's guilty plea:

> "On or about October 6th of 2015, . . . defendant, while in the County of Tuolumne, was in possession and did drive a vehicle, [a] 1993 Honda motorcycle, that did not belong to him, and did so without the owner's consent."

**II.     Cases Nos. CRF50084 and CRF50586**

The trial court granted the prosecution's request to judicially notice several minute orders, two bail bonds, and an arrest warrant.

Defendant was present at a March 16, 2016 hearing in connection with case No. CRF48393. He was ordered to appear in court again on March 25, 2016, but failed to do so. A bench warrant was issued. Defendant subsequently made an appearance on April 13, 2016.

On May 13, 2016, defendant was arrested in connection with case No. CRF50084. A bail bond executed on May 14, 2016, indicated he was ordered to appear in court on May 27, 2016. Defendant did not make an appearance until September 1, 2016.

The parties agreed to the following stipulation:

> "On March 23, 2016, at 10:42 p.m., . . . defendant . . . arrived at Marshall Medical Center Emergency Room, 1100 Marshall Way, Placerville, CA 95667. He was admitted into the hospital at 4:32 a.m. on March 24. He stayed there until he was discharged at 10:10 p.m. on March 24. His residence is in Placerville."

## III. Case No. CRF52089

### a. *Prosecution's case-in-chief*

#### i. Howard B.[7]

On May 31, 2016, Howard noticed "a young lady" sitting on a bench next to his front doorstep. She was "very distressed and hurt"; she was "bent over," "was crying," and "had her face covered with her hands." Howard observed redness on her face and bruises on her arms. He asked her what had occurred and she stated, "her boyfriend had dumped her off out there after beating her up." She said she had been "pistol whipped." She also told Howard her boyfriend was heading to a mobilehome park in Jamestown in a green pickup truck and provided a license plate number. Howard phoned 911 and reported the incident. Law enforcement arrived at his house less than 15 minutes later.

#### ii. Kevin L.

Kevin arranged to have defendant and his girlfriend come to his mobilehome "[t]o do some work," namely, "[h]ousecleaning and whatever [he] could find for [them] to do." On May 31, 2016, defendant came to Kevin's residence alone in a green pickup truck. He told Kevin he and his girlfriend "were arguing" and he "dropped her off." Defendant left the property sometime after deputies arrived.

#### iii. Deputies Sandelin and Lockhart

On May 31, 2016, Tuolumne County Sheriff's Deputies Sandelin and Lockhart were dispatched to the mobilehome park. Sandelin located the green pickup truck in Kevin's driveway and spoke with Kevin. With Kevin's consent, the deputies searched the property. Outside, Lockhart "found a space on the back fence where . . . some bamboo privacy fencing material had been pulled apart" and "there w[ere] [shoe-shaped] disturbance[s] in the grounds indicating somebody had climbed over the fence in that

---

**7** Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

area." In the truck, Lockhart found a loaded air rifle, pellets, and a cell phone. He picked up the phone and noticed "the screen was lit and active" and appeared to be recording audio for "around an hour and 44 minutes." This recording was subsequently extracted.

iv. Deputy Leyva

On May 31, 2016, Tuolumne County Sheriff's Deputy Leyva was dispatched to Howard's home, where he saw the victim "sitting on a chair near the front door" and "crying hysterically." She exhibited "a red mark on her right collarbone approximately two and a half inches"; "a small red mark on her right jawline"; "a red mark on her left neck about a half inch"; and redness, bruising, and moderate swelling on her left arm. The victim told Leyva defendant struck her with "the stock end of a pellet gun." She "[a]ppeared to be in a lot of pain" and "had trouble speaking."

Leyva accompanied the victim to the hospital. He photographed the following injuries: swelling and discoloration of the left arm; swelling of the right arm; scratches on the right elbow and forearm area; scratches and abrasions on the chin and collarbone area; a "red mark" on the left side of the neck; and an abrasion above the right eye with "slight swelling." Leyva also observed "some scratch marks on her left elbow," "redness to the left side of her face," and "two lumps on the back of her head that were close to each other" and "dime size as far as circumference."

On June 16, 2016, Leyva attempted to contact the victim but was unable to do so. Thereafter, he listened to an audio recording from the cell phone found in defendant's truck. It contained a 30-minute interaction between a man and a woman. Leyva recognized the woman's voice as the victim's based on his prior interactions with her. The following took place:

"[Defendant]:      I wish I could trust you enough to clean . . . the truck
                   out, but I can't.

"[Victim]:         I'm not cleaning nothing of yours. [¶] . . . [¶]

"[Defendant]:      . . . . Get out. How's that? Get out.

7.

"[Victim]:        Nope.

"[Defendant]:        Yep.  Well then I won't work for Kevin and get gas to go to Placerville.  How's that?  [laughing]  Touché motherfucker.  Touché.  [¶] . . . [¶]

"[Victim]:        I'll get out and cause a scene inside the trailer park.

"[Defendant]:        We're not going to the trailer park. . . .  [¶] . . . [¶]

"[Victim]:        I'll start knocking door to door.

"[Defendant]:        Have at it, I'll go that way.  And I'll say fuck Kevin, I don't know that crazy bitch.

"[Victim]:        [unintelligible]

"[Defendant]:        Go knock on his door then because I'm not going up there with you.  You're not going to fucking embarrass me.

"[Victim]:        It's an embarrassment that you like to beat your women.

"[Defendant]:        No, it's an embarrassment that my women act like such cunts.

"[Victim]:        Doesn't give you the right to put hands on them. [¶] . . . [¶]

"[Defendant]:        . . . .  I'm not gonna go work for Kevin with you with me.  Period. . . .

"[Victim]:        [unintelligible]

"[Defendant]:        Why don't you just get out?

"[Victim]:        I tried already.

"[Defendant]:        You're a miserable bitch.  [¶] . . . [¶]  . . . I didn't have no crank.[8]

"[Victim]:        Oh really?

---

**8**        At trial, Leyva testified "crank" is slang for methamphetamine.

"[Defendant]:     Really.

"[Victim]:     Shooting it in your arm?

"[Defendant]:     . . . I didn't have no fucking crank. . . .

"[Victim]:     Is that all you're doing?  Shooting water in your arm then?  [¶] . . . [¶]

"[Defendant]:     I'll tell you what, it was crank huh?  Crank, crank, crank.  That's all you want, huh?  Are you a little crank whore?

"[Victim]:     Yep.

"[Defendant]:     I figured as much.  I figured as much.  Little crank whore.

"[Victim]:     Junkie.  [¶] . . . [¶]

"[Defendant]:     Yea, so what, I like to shoot crank.  Big deal.  [¶] . . . [¶]  . . . Dick hype.  Can't wait [eight] months for her old man.  She's a fucking dick hype.  Gotta have cock from a fucking drop out.  Piece of shit bitch.  That's what you are.  Always will be.

"[Victim]:     [unintelligible]

"[Defendant]:     Another piece of shit dick hype.  [unintelligible]  That's how you like it.  The bigger the better.  The more the better.  Ain't that right toots? . . .

"[Victim]:     Don't talk to me. . . .

"[Defendant]:     . . . .  I'll talk to whoever I goddamned well please.  Ain't nobody gonna do nothing about it.

"[Victim]:     Well that's because you're Brian Reynolds.

"[Defendant]:     That's right.  Brian motherfucking Reynolds.  Now get it straight.  [¶] . . . [¶]

"[Victim]:     Amy would have fucking kicked your ass by now.

"[Defendant]:     I would have fucking beat her ass just like I did yours. . . .

9.

"[Victim]:          She'd fuck you up.

"[Defendant]:       You wish, what do you idolize her? [unintelligible] You idolize that bitch. She knows how to work the men, like you. You caused this one. Keep it up and I'm going to shoot you right in the forehead. [¶] . . . [¶] . . . Keep running your mouth bitch. You want to see what I'm about. Is that what it is?

"[Victim]:          Slamming dope and beating women.

"[Defendant]:       That's right, want to see what I'm about? Okay. . . . Is that right? Shoot dope and beat women. That's what I do, huh . . . ? You're a cunt.

"[Victim]:          So are you. [¶] . . . [¶]

"[Defendant]:       Shooting dope and beating women. That's what I do. . . .

"[Victim]:          Yeah.

"[Defendant]:       That's all I do? Really? Really? Huh. That's cool. Know what you're going to do, peck and peck until you get a reaction out of me. . . .

"[Victim]:          No. [unintelligible]

"[Defendant]:       You'll definitely get one. . . . Of course you know this. Went there a million times. Don't. I'm going to fucking punch you right in the face bitch. You fucking whore. You think that shit's fucking funny? Bitch. . . .

"[Victim]:          Shoot me, I don't give a fuck.

"[Defendant]:       Fuck you nigger. Fucking whore bitch. Fucking cunt.

"[Victim]:          Right back at you.

"[Defendant]:       Get the fuck out of my truck. I'm not kidding bitch. You got it, I won't stop no more. You got it. You got your way. Go, I will not pick you . . . go. You can go all you want motherfucker, get. Get. It's beyond

10.

repair.  You're never going to repair this. . . .  You win.  Ding ding ding winner winner.  [¶] . . . [¶]

"[Victim]:     Shoot me.

"[Defendant]:     I will.  [¶] . . . [¶]

"[Victim]:     Hope your shot of dope was worth it.

"[Defendant]:     . . . .  Stop it bitch.

"[Victim]:     Owww, you fucking nigger.

"[Defendant]:     Keep it up bitch, keep it up[.]

"[Victim]:     [screaming]

"[Defendant]:     You fucking cunt[.]

"[Victim]:     [screaming]

"[Defendant]:     [S]hut your fucking mouth[.]

"[Victim]:     [screaming] . . .

"[Defendant]:     You're a fucking cunt.  Lying bitch.  I hate you bitch.  Keep it up.  [acceleration]  Keep it up nigger.  I'm going to knock the fucking shit out of you bitch.  Keep it up[.]  Fucking whore, I'm going to fucking knock you out bitch.  Keep it up, keep it up cunt.  Fucking whore bitch.  I hate you cunt.

"[Victim]:     [crying]  I can't see out of my eye.

"[Defendant]:     Good bitch, I hope you never see again.  Fucking cunt.

"[Victim]:     [screaming]

"[Defendant]:     Shut the fuck up.  Shut up.  Shut up.  Bitch.  Shut up.  I hope you fucking die.

"[Victim]:     [crying/screaming]

"[Defendant]:     I hope you die bitch.

"[Victim]:     [screaming]

11.

"[Defendant]:    I hope you die.  I fucking hate you, I hate you, I hate you.  Get out of my truck, get the fuck out, right now.  Get the fuck out.  [¶] . . . [¶] . . . Get out, get out now bitch, get the fuck out bitch, get the fuck out of my truck right now.  Get out.  I'm gonna kill you.  Get the fuck out.  I hate you.  I fucking hate you.  I hate you. [¶] . . . [¶] . . . I hate you.  I hate you.  Get the fuck out.  Get the fuck out, get the fuck out bitch.

"[Victim]:        You're going to jail.

"[Defendant]:    Fuck you nigger.  I hope so.  I hope so[.]

"[Victim]:        You're going to jail.

"[Defendant]:    I hope so. . . .  I hope so bitch.  I hate you.  I fucking hate you.  I hate you.  Go ahead, I'll hit you right in the mouth.  Go ahead bitch.  You wanna know how hard I can hit?  Huh?  I hate you.  I hate you.  I hate you.  Get the fuck out.  Get out bitch.  You fucking whore.

"[Victim]:        [crying]

"[Defendant]:    Go ahead and yell now.  Go ahead and yell now bitch.  Yell now.  Huh?  [F]ucking drunk bitch.  I fucking hate you, you fucking cunt, you fucking whore.  You're such a fucking bitch.  I don't ever want to see you again, ever.

"[Victim]:        [crying]

"[Defendant]:    [imitating crying]  Fuck you.  Sorry ass nigger.  Get the fuck out right now bitch.  Get the fuck out and don't come back.  Get the fuck out bitch.

"[Victim]:        No.  HELP!

"[Defendant]:    I don't give a fuck.  Yell all you want.  Get out.

"[Victim]:        HELP!

"[Defendant]:    Get out bitch, I don't give a fuck if we go to jail or not.  Get out, I hate you.

"[Victim]:        HELP!  [acceleration]

12.

"[Defendant]:    Really?  I'm going to punch you right in the mouth, cunt.  You're a fucking bitch.  You're a fucking whore and I fucking hate your guts.  Bitch.  Get out.

"[Victim]:    STOP!

"[Defendant]:    Shut the fuck up.  Get out, get out bitch.  Get the fuck out of my truck.  You hear me, you whore?  You fucking cunt bitch.  Get out.  Get out.

"[Victim]:    Stop right here, I will.

"[Defendant]:    Fucking nigger.  I'll fucking kill your punk ass first.  I'll fucking kill you deader than shit bitch.  Like a fucking rat.  Just like a rat, I'll deal with you.  Just like a fucking rat you are.

"[Victim]:    Stop and let me out.

"[Defendant]:    Fuck off, drunk cunt. . . .

"[Victim]:    Let me out right now, I'm calling the cops.

"[Defendant]:    I will.

"[Victim]:    Ahhh[.]

"[Defendant]:    What are you going to do?  What are you going to do?

"[Victim]:    [screaming]

"[Defendant]:    Are you gonna call the cops?  Shut up.  Yell all you want bitch.  Yell.  Get the fuck out.  Get out, get the fuck out right now.

"[Victim]:    I'm calling the cops on you.

"[Defendant]:    Good, drunk cunt, get out.  Bye bitch.  Get the fuck out, cunt.  [¶]  . . . I fucking hate you, I hate you.

"[Victim]:    I got your license plate number.

13.

"[Defendant]:          You're worse than any bitch I've ever been with in my life.  Good bye. . . .  I told you I'm never coming back.  Good bye."**9**

## DISCUSSION

**I.     Defendant's failure-to-appear convictions**

Defendant contends one or both of his failure-to-appear convictions must be reversed on three grounds:  (1) instructional error; (2) ineffective assistance of counsel; and (3) cumulative error.  For the reasons set forth below, we affirm these convictions.

a.  *Instructional error*

Prior to summations, the trial court instructed the jury:

"[D]efendant is charged in [c]ount[s] [I] and [II] with willfully failing to appear in court when required in violation of . . . [s]ection 1320.5.  In order to find . . . defendant guilty of this crime, the People must prove that:  One, . . . defendant was charged with or convicted of a felony.  Two, . . . defendant was released from custody on bail.  Three, . . . defendant willfully failed to appear as required.  And four, . . . defendant willfully failed to appear in order to evade the process of the [c]ourt.

"If the prosecution has produced evidence that . . . defendant failed to appear within 14 days of his missed court date, you may, but are not required to, infer that . . . defendant intended to evade the process of the court.  Someone commits an act willfully when he or she does it willingly or on purpose. . . ."**10**

"A claim of instructional error is reviewed de novo."  (*People v. Ghebretensae* (2013) 222 Cal.App.4th 741, 759, citing *People v. Guiuan* (1998) 18 Cal.4th 558, 569-570; see *People v. Quinonez* (2020) 46 Cal.App.5th 457, 465 ["We review de novo the question of whether a jury instruction correctly states the law."].)

---

**9**      The jury listened to the audio recording.

**10**     At the time of trial, there was no standard criminal pattern jury instruction for failure to appear in court while released on bail.  The record indicates the prosecution drafted the instruction and defense counsel did not object.

14.

"Every person who is charged with or convicted of the commission of a felony, who is released from custody on bail, and who in order to evade the process of the court willfully fails to appear as required, is guilty of a felony."  (§ 1320.5; see *People v. Hagedorn* (2005) 127 Cal.App.4th 734, 744, fn. 6 [" 'The word "willfully" as generally used in the law is a synonym for "intentionally," i.e., the defendant intended to do the act proscribed by the penal statute.' "].)  "[T]he Legislature intended section 1320.5 to be a specific intent crime.  Not only must the individual intend to fail to appear, but also he or she must intend the failure to appear to 'achieve some additional purpose,' i.e., 'to evade the process of the court.' "  (*People v. Wesley* (1988) 198 Cal.App.3d 519, 522 (*Wesley*); see *People v. Forrester* (1994) 30 Cal.App.4th 1697, 1701 [regarding violation of § 1320, subd. (b)].)  "Willful failure to appear within 14 days of the date assigned for appearance may be found to have been for the purpose of evading the process of the court."  (§ 1320.5.)

On appeal, defendant points out the court "instructed the jury that it may infer guilty intent simply if [he] failed to appear within the 14-day period, regardless of whether or not that failure was willful."  The Attorney General asserts the instruction—as it pertains to the permissive inference—should have specified an intentional failure to appear but maintains any error is harmless beyond a reasonable doubt.  (See *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*) ["[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."]; *People v. Geier* (2007) 41 Cal.4th 555, 608 ["The harmless error inquiry asks:  'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' "].)

We find no error.  " '[A] jury instruction cannot be judged on the basis of one or two phrases plucked out of context . . . .'  [Citation.]  While a single sentence in an instruction 'may or may not be confusing, depending upon the context in which the sentence lies,' an instructional error ' " 'cannot be predicated upon an isolated phrase,

15.

sentence or excerpt taken from the instructions . . . .' " ' [Citation.] [¶] Instead, ' "[t]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction." [Citation.]' [Citations.]" (*People v. Quinonez*, *supra*, 46 Cal.App.5th at pp. 465-466.) Here, the instruction given for failure to appear in court while released on bail correctly identified the essential elements of the offense at the outset: (1) defendant was charged with or convicted of the commission of a felony; (2) defendant was released from custody on bail; (3) defendant *willfully failed to appear in court* as required; and (4) defendant *willfully failed to appear in court* as required in order to evade the process of the court. (Cf. *Wesley*, *supra*, 198 Cal.App.3d at pp. 521, 524 [trial court failed to instruct on specific intent element].) Hence, "even if the instruction[] on [the permissive inference] w[as] incomplete" because it referred to a mere failure to appear rather than a willful or intentional failure to appear, "such a defect would be cured by reading [the] instruction[] as a whole." (*People v. Rhodes* (1971) 21 Cal.App.3d 10, 21, fn. omitted; see *People v. Sanchez* (2001) 26 Cal.4th 834, 852 ["Jurors are presumed able to understand and correlate instructions . . . ."].)

Moreover, it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty on both counts absent the permissive inference instruction. As to the first count, the record establishes defendant appeared in court on March 16, 2016. He was ordered to appear again on March 25, 2016. On March 23, 2016, defendant went to a hospital in Placerville. He was admitted on the morning of March 24, 2016, but discharged later that night. The following day, defendant did not show up to court. Instead, his next appearance was on April 13, 2016. No explanation was given as to why defendant could not be present on March 25, 2016, when he had already been discharged from the hospital the night before. No explanation was given as to why he only appeared 19 days after the assigned date. (Cf. *People v. Forrester*, *supra*, 30 Cal.App.4th at p. 1702 [the accused testified his vehicle broke down on scheduled court date and he

16.

called the court to explain his absence]; *Wesley*, *supra*, 198 Cal.App.3d at pp. 521, 525 [the accused was present in court on assigned court date, left during lunch break due to side effects of medication, returned to court the next day, and explained his absence].)
As to the second count, the record establishes defendant was arrested on May 13, 2016. By the terms of a bail bond executed on May 14, 2016, he was ordered to appear in court on May 27, 2016. Defendant failed to do so. Instead, his next appearance was on September 1, 2016. Again, no explanation was given as to why defendant could not be present on May 27, 2016, or why he only appeared more than three months after the assigned date. There was ample circumstantial evidence that defendant—on two separate occasions—willfully failed to appear in court as required in order to evade the process of the court. (See *People v. Pre* (2004) 117 Cal.App.4th 413, 420 ["Intent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense."].)

   b. *Ineffective assistance of counsel*

Defendant asserts his attorney rendered ineffective assistance by failing to object to: the trial court's admission into evidence and judicial notice of the bail bond executed on May 14, 2016; the prosecution's closing argument; and the prosecution's rebuttal.

To establish ineffective assistance of counsel, a defendant must show (1) defense counsel did not provide reasonably effective assistance in view of prevailing professional norms; and (2) defense counsel's deficient performance was prejudicial. (See *People v. Oden* (1987) 193 Cal.App.3d 1675, 1681, citing *Strickland v. Washington* (1984) 466 U.S. 668, 687-688.) "It is . . . particularly difficult to establish ineffective assistance of counsel on direct appeal, where we are limited to evaluating the appellate record. If the record does not shed light on why counsel acted or failed to act in the challenged manner, we must reject the claim on appeal unless counsel was asked for and failed to provide a satisfactory explanation, or there simply can be no satisfactory explanation." (*People v. Scott* (1997) 15 Cal.4th 1188, 1212.)

17.

The record before us " 'does not illuminate the basis for the attorney's challenged acts or omissions . . . .' " (*People v. Silvey* (1997) 58 Cal.App.4th 1320, 1329.) Defense counsel was never asked to explain why she did not object to the evidence or remarks in question. Furthermore, " ' "[a]n attorney may choose not to object for many reasons, and the failure to object rarely establishes ineffectiveness of counsel" [citation].' [Citation.]" (*People v. Gurule* (2002) 28 Cal.4th 557, 609-610; see *People v. Jones* (2003) 29 Cal.4th 1229, 1254 [" ' "[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " ' "]; *People v. Riel* (2000) 22 Cal.4th 1153, 1185 [" 'Generally, failure to object is a matter of trial tactics as to which we will not exercise judicial hindsight. . . . A reviewing court will not second-guess trial counsel's reasonable tactical decisions.' "].) Accordingly, we reject defendant's claims of ineffective assistance of counsel.

c. *Cumulative error*

Defendant contends that the cumulative effect of the asserted errors requires reversal of one of his convictions for failure to appear. Because we have concluded there were no errors, defendant's claim of cumulative error fails. (*People v. Bacon* (2010) 50 Cal.4th 1082, 1129, *People v. Heard* (2003) 31 Cal.4th 946, 982.)

## II. Defendant's conviction for willful infliction of corporal injury on a cohabitant

Defendant contends his conviction on count IV in case No. CRF52089 must be reversed on two grounds: (1) violation of the Sixth Amendment's confrontation clause; and (2) instructional error. For the reasons set forth below, we affirm the conviction.

a. *Confrontation clause*

The prosecution moved in limine to admit into evidence the victim's statements to Leyva at the hospital. Defense counsel argued these statements were testimonial and subject to the Sixth Amendment's confrontation clause. At a motion hearing, the prosecution stated the victim "has effectively evaded the process and has not been in

18.

contact with anybody since she was released from the hospital" and described numerous unsuccessful attempts to contact her. Later, the trial court ruled:

> "[T]he statement of the victim at the [hospital]. This was a statement made . . . to Deputy Leyva. I think I will admit that statement . . . for it was sometime after the event, but the condition of the victim as described would suggest that she was still suffering trauma of the incident and that the statement would qualify as a spontaneous statement."

During trial, at the outset of Leyva's testimony, defense counsel "renew[ed] [his] objection on . . . Sixth Amendment grounds" and advised "it's going to be . . . ongoing . . . ." The court overruled the objection. Leyva testified he initially encountered the victim at Howard's residence and subsequently accompanied her to the hospital. (See *ante*, at p. 7.) There, he asked her to "tell [him] what happened" and "she just rolled right into it." (Italics omitted.)

The victim revealed she and defendant resided in Placerville and "were in a dating relationship for approximately seven months." Two days earlier, they went to defendant's father's residence in East Sonora because defendant "wanted to help his dad out around the house and run errands and things like that." At some point, the victim came across defendant in a bathroom "with a needle in his arm." She "stormed out of the bathroom . . . because she was so upset." The two argued in a bedroom "for about 15 to 20 minutes." When the victim made "some type of . . . shooing motion," defendant "became extremely upset and snapped." He "jumped on top of [her]" and "pinned her to the bed." The victim "scratch[ed], punch[ed], kick[ed,] and scream[ed]" and defendant "slap[ped] her across the left side of the face with an open palm or open hand." He eventually got off. However, as the victim was walking to the bathroom, defendant punched her in the back of the head, causing her to see "dark spots" and collapse. Fifteen minutes later, she stood up, gathered her belongings, and left.

The victim was "about four houses away from [defendant's father's] residence" when defendant pulled up in his truck. He claimed "he was going back to Placerville"

19.

and instructed her "to get in" "if she wanted a ride." The victim complied because "she had no cell phone and no other way to get back home . . . ." During the drive, defendant tried to argue with her. When the victim ignored him, he threatened to strand her. Defendant stopped in a turnout and a quarrel ensued. He exited the vehicle to "retrieve[] a rifle pellet gun from the back of the truck" and "started to . . . target practice with the nearby rocks and trees." The victim, who "did not want [defendant] to get the idea of possibly using the gun on her," took a canister of pellets from the top of the dashboard and tossed it out the window. Defendant reentered the truck, yelled at her, and "struck her with the stock end of the rifle" "on the left arm." The victim screamed "he was now going to go to jail for what he did." Defendant punched the back of her head twice. Thereafter, the victim exited the vehicle and ended up at Howard's residence.

In its closing argument, the prosecution distinguished between the events underlying counts II and IV, respectively:

> "So we've got [c]ount [II] is when [defendant] punched [the victim] in the back of the head at his father's house. . . . Count [IV] is when he punches her in the truck."

"[T]he confrontation clause of the Sixth Amendment to the federal Constitution prohibits 'admission of testimonial statements of . . . witness[es] who did not appear at trial unless [the witness] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.' " (*People v. Romero* (2008) 44 Cal.4th 386, 421, italics omitted, quoting *Crawford v. Washington* (2004) 541 U.S. 36, 53-54.) "Statements are testimonial if the primary purpose was to produce evidence for possible use at a criminal trial; they are nontestimonial if the primary purpose is to deal with a contemporaneous emergency such as assessing the situation, dealing with threats, or apprehending a perpetrator." (*People v. Romero*, *supra*, at p. 422.) In the instant case, the Attorney General concedes the victim's statements at the hospital were testimonial

and defendant "correctly identifies an error in the trial court's confrontation clause analysis."[11]

"Confrontation clause violations are subject to federal harmless-error analysis under *Chapman* . . . ." (*People v. Geier*, *supra*, 41 Cal.4th at p. 608.) "The harmless error inquiry asks: 'Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?' [Citation.]" (*Ibid*.)

"Any person who willfully inflicts corporal injury resulting in a traumatic condition upon a [cohabitant] is guilty of a felony . . . ." (§ 273.5, subd. (a); see *id.*, subd. (d) [" '[T]raumatic condition' means a condition of the body, such as a wound, or external or internal injury, including, but not limited to, injury as a result of strangulation or suffocation, whether of a minor or serious nature, caused by a physical force."]; see,

---

[11] The Attorney General argues defendant "forfeited his right to confront the victim by dissuading her from testifying . . . ." (See *Davis v. Washington* (2006) 547 U.S. 813, 833 ["[O]ne who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation."].) "The forfeiture by wrongdoing doctrine is codified in [Evidence Code] section 1390." (*People v. Kerley* (2018) 23 Cal.App.5th 513, 550, fn. omitted.)

Evidence Code section 1390 provides, in pertinent part:

"(a) Evidence of a statement is not made inadmissible by the hearsay rule if the statement is offered against a party that has engaged, or aided and abetted, in the wrongdoing that was intended to, and did, procure the unavailability of the declarant as a witness.

"(b)(1) The party seeking to introduce a statement pursuant to subdivision (a) shall establish, by a preponderance of the evidence, that the elements of subdivision (a) have been met at a foundational hearing."

Defendant points out "[t]he prosecut[ion]'s motion [in limine] made no mention of the forfeiture by wrongdoing doctrine or [Evidence Code] section 1390, and it did not request the foundational evidentiary hearing required by [Evidence Code] section 1390." The Attorney General acknowledges the prosecution "made no formal motion under Evidence Code section 1390 to admit the victim's statements via forfeiture by wrongdoing."

21.

e.g., *Conservatorship of Lee C.* (2017) 18 Cal.App.5th 1072, 1095 [bruise]; *People v. Wilkins* (1993) 14 Cal.App.4th 761, 771 ["redness about [the victim's] face and nose"].)

The record demonstrates law enforcement recovered an air rifle and a cell phone from defendant's truck on May 31, 2016. The phone contained an audio recording of an exchange between defendant and the victim inside that vehicle on the same date. At first, the pair expressed their mutual animosity verbally. Defendant used profanity, divulged he had previously "beat" the victim, and threatened to "shoot [her] right in the forehead" and "punch [her] right in the face." Apparently, the altercation escalated. The victim cried, "Owww . . . ." She then screamed and sobbed unremittingly and pleaded for help as well as her release. Meanwhile, defendant continued to use profanity, expressed his hatred for the victim; wished for her to "never see again" and "die"; and said he would "punch [her] right in the mouth"; "knock the fucking shit out of [her]," and "kill [her] deader than shit," inter alia. Before leaving the truck, the victim told defendant he was "going to jail" and she was "calling the cops on [him]."

Thereafter, Howard came across the victim in front of his home. She was hurt and in distress. The victim stated she was "pistol whipped" and "dumped . . . off" by defendant. Howard observed redness on her face and bruises on her arms. Leyva, who arrived soon afterward, also observed and later photographed the various injuries to the victim's head, neck, and arms. Before she was transported to the hospital, the victim—who was "crying hysterically," "[a]ppeared to be in a lot of pain," and "had trouble speaking"—told Leyva defendant struck her with "the stock end of a pellet gun." Deputies tracked defendant to Kevin's mobilehome, but defendant immediately fled the scene. Thus, even without the challenged statements, it is clear beyond a reasonable doubt that a rational jury would have found defendant guilty of willful infliction of corporal injury on a cohabitant on count IV.

b. *Instructional error*

Defendant challenges his felony conviction for infliction of corporal injury resulting in a traumatic condition in count IV in case No. CRF52089 (§ 273.5, subd. (a)) on the ground the trial court failed to instruct on the lesser included offense of misdemeanor battery on a cohabitant (§ 243, subd. (e)(1)).

In its summation, the prosecution discussed which acts constituted count IV. Those acts included defendant punching the victim in the back of the head twice, while they were in the truck, resulting in two dime-sized bumps.

Defendant concedes that there was evidence the victim was injured during the altercation in the truck, and that the victim said she was struck with a pellet rifle on her left arm and was hit twice on the head. He also concedes Leyva felt the two lumps on the victim's head. Defendant does not dispute that audio recording played for the jury related to the altercation in the truck. He claims, though, that the jury could have concluded the victim was not credible and that all her injuries were inflicted during the prior altercation at defendant's father's house. As a result, the argument goes, there was substantial evidence defendant did not inflict corporal injury resulting in a traumatic condition during the altercation in the truck so the trial court erred in not instructing on the lesser related offense.

The Attorney General responds that the evidence clearly shows defendant directly applied physical force to the victim in the truck, which resulted in bodily injury, and so instruction on the lesser related offense of misdemeanor battery on a cohabitant was not warranted. We agree with the Attorney General.

Prior to summations, the trial court instructed the jury:

> "[CALCRIM No. 840 (Inflicting Injury on Spouse, Cohabitant, or Fellow Parent Resulting in Traumatic Condition):] . . . [D]efendant is charged in [c]ount [II] and [IV] with inflicting an injury on someone with whom . . . defendant had or previously had a dating relationship that

23.

resulted in a traumatic condition, a violation of . . . [s]ection 273.5[, subdivision ](a).

"To prove that . . . defendant [is] guilty of this crime, the People must prove that[:]  [¶]  [(1)] . . . defendant willfully inflicted a physical injury on someone with whom he had or previously had a dating relationship; and  [¶]  [(2)] the injury inflicted by . . . defendant resulted in a traumatic condition.

"Someone commits an act willfully when he or she does it willingly or on purpose.  A traumatic condition is a wound or other bodily injury, whether minor or serious, caused by [the] direct application of physical force.

"A traumatic condition is [the] result of an injury . . . if the traumatic condition was a natural and probable consequence of the injury; and [¶] . . . the injury was a direct and substantial factor in causing the condition; and [¶] . . . the condition would not have happened without the injury.

"A natural and probable consequence[] is one that a reasonable person would know is likely to happen if nothing unusual intervenes.  In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

"A substantial factor is more than a trivial or remote factor; however, it does not need to be the only factor that resulted in the traumatic condition."

As previously stated, "[a] claim of instructional error is reviewed de novo." (*People v. Ghebretensae*, *supra*, 222 Cal.App.4th at p. 759, citing *People v. Guiuan*, *supra*, 18 Cal.4th at pp. 569-570.)

A trial court is obligated to instruct on lesser included offenses " 'when the evidence raises a question as to whether all of the elements of the charged offense were present [citation], but not when there is no evidence that the offense was less than that charged.  [Citations.]' " (*People v. Breverman* (1998) 19 Cal.4th 142, 154.)  "[T]he existence of '*any* evidence, no matter how weak' will not justify instructions on a lesser included offense, but such instructions are required whenever evidence that the defendant is guilty only of the lesser offense is 'substantial enough to merit consideration' by the

24.

jury. [Citations.] 'Substantial evidence' in this context is ' "evidence from which a jury composed of reasonable [persons] could . . . conclude[]" ' that the lesser offense, but not the greater, was committed. [Citations.]" (*Id.* at p. 162.)

As noted, "[a]ny person who willfully inflicts corporal injury resulting in a traumatic condition upon a [cohabitant] is guilty of a felony . . . ." (§ 273.5, subd. (a).) "It is injury resulting in a traumatic condition that differentiates this crime from lesser offenses" (*People v. Gutierrez* (1985) 171 Cal.App.3d 944, 952, italics omitted), such as battery in violation of section 243, subdivision (e)(1)[12] (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1457). Based on the record, a rational jury could not conclude defendant committed misdemeanor battery of a cohabitant but not willful infliction of corporal injury on a cohabitant. (See *ante*, at p. 22.) Accordingly, we find the court had no obligation to instruct the jury on the lesser included offense.

## III. On-bail enhancements

In case No. CRF52089, the trial court (1) imposed two on-bail enhancements on count IV; and (2) imposed but stayed two on-bail enhancements on count I. In case No. CRF50084, the court imposed an on-bail enhancement but struck it pursuant to section 1385. In case No. CRF50586, the court imposed an on-bail enhancement.

Defendant argues it was error for the trial court to impose more than two on-bail enhancements.

The Attorney General admits "[t]he trial court could only impose two on-bail enhancements as part of [defendant]'s aggregate sentence, because [defendant] was released on bail in two separate cases when he committed the most recent offenses" and "[a]ny on-bail enhancements in excess of two were unauthorized." We accept this

---

[12] "When a battery is committed against . . . a person with whom the defendant is cohabitating, . . . the battery is punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in a county jail for a period of not more than one year, or by both that fine and imprisonment." (§ 243, subd. (e)(1).)

concession. Only two on-bail allegations may be imposed: one for committing an offense while released from custody on bail in case No. CRF48393 and one for committing an offense while released from custody on bail in case No. CRF50084. On remand, all but two of defendant's on-bail enhancements must be stricken.

## IV. Senate Bill No. 1393

At the time defendant was sentenced, section 667, former subdivision (a)(1), provided, in part:

> "In compliance with subdivision (b) of [s]ection 1385, any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately."

Section 1385, subdivision (a) and former subdivision (b) then provided, in part:

> "(a) The judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. . . .

> "(b) This section does not authorize a judge to strike any prior conviction of a serious felony for purposes of enhancement of a sentence under [s]ection 667."

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill No. 1393 (Stats. 2018, ch. 1013, § 1). As of January 1, 2019, section 667, subdivision (a)(1), provides, in pertinent part:

> "Any person convicted of a serious felony who previously has been convicted of a serious felony in this state . . . shall receive, in addition to the sentence imposed by the court for the present offense, a five-year enhancement for each such prior conviction on charges brought and tried separately."

Former subdivision (b) of section 1385 was deleted (Stats. 2018, ch. 1013, § 2, eff. Jan. 1, 2019).

In his opening brief, defendant asserts Senate Bill No. 1393 applies retroactively to the case and a remand for reconsideration of sentencing is proper. The Attorney

26.

General agrees. We accept this concession. On remand, the trial court shall have an opportunity to exercise its sentencing discretion as to the prior serious felony enhancement imposed in case No. CRF52089.

## V. *Dueñas*

Citing *Dueñas*, *supra*, 30 Cal.App.5th 1157, defendant contends the court improperly imposed fines without determining whether he had the ability to pay them. Because we are remanding the case for resentencing, we need not address this claim. On remand, defendant—if he should choose to do so—may raise the argument during resentencing. (See *People v. Buycks* (2018) 5 Cal.5th 857, 893 ["[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' "].)

## VI. Senate Bill No. 136

At the time defendant was sentenced, section 667.5, former subdivision (b), provided, in part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of [s]ection 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term or county jail term imposed under subdivision (h) of [s]ection 1170 or when sentence is not suspended for any felony . . . ."

After defendant was sentenced, but while his case was still pending on appeal, the Legislature enacted Senate Bill No. 136 (Stats. 2019, ch. 590, § 1), which now provides, in pertinent part:

> "[W]here the new offense is any felony for which a prison sentence or a sentence of imprisonment in a county jail under subdivision (h) of [s]ection 1170 is imposed or is not suspended, in addition and consecutive to any other sentence therefor, the court shall impose a one-year term for each prior separate prison term for a sexually violent offense as defined in

27.

subdivision (b) of [s]ection 6600 of the Welfare and Institutions Code . . . ." (§ 667.5, subd. (b).)

In his supplemental brief, defendant asserts Senate Bill No. 136 applies retroactively to the case and asks us to strike the four prior prison term enhancements because none of the underlying offenses was a sexually violent offense. The Attorney General agrees. We accept this concession. On remand, the prior prison term enhancements must be stricken.

## DISPOSITION

The matter is remanded to the trial court with directions to: (1) strike all but two of defendant's on-bail enhancements; (2) exercise its sentencing discretion as to the prior serious felony enhancement pursuant to section 1385, as amended by Senate Bill No. 1393, (3) strike the four prior prison term enhancements pursuant to section 667.5, subdivision (b) as amended by Senate Bill No. 136; (4) resentence defendant accordingly; and (5) prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects, the judgments are affirmed.

DETJEN, J.

WE CONCUR:


HILL, P.J.


SNAUFFER, J.

28.